1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

9    JOSE AVALA,                                              1:10-CV-01424 LJO GSA HC

10                        Petitioner,                          FINDINGS AND RECOMMENDATION
                                                              REGARDING PETITION FOR WRIT OF
11          v.                                                HABEAS CORPUS

12

13   J. D. HARTLEY, Warden,

14                        Respondent.
     _____/

15

16          Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

17   pursuant to 28 U.S.C. § 2254.

18                              **RELEVANT HISTORY**[1]

19          Petitioner is currently in the custody of the California Department of Corrections and

20   Rehabilitation following his conviction in Los Angeles County Superior Court in 1988 of first

21   degree murder and attempted second degree murder.  He is serving a sentence of twenty-six years

22   to life with the possibility of parole.

23          Petitioner does not challenge his underlying conviction; rather, he claims the California

24   Board of Parole Hearings ("Board") violated his due process rights in its August 7, 2008,

25   decision finding Petitioner unsuitable for parole.  Petitioner contends the Board denied his due

26   process rights when it denied parole based on the commitment offense without articulating a

27   _____

28          [1] This information is taken from the pleadings and the state court documents attached to Respondent's
     answer, and are not subject to dispute.

                                                      1

1  nexus between the offense and the Board's determination of current dangerousness.

2        Petitioner filed a habeas petition challenging the Board's 2008 decision in the Los

3  Angeles County Superior Court on January 5, 2009.  The petition was denied in a reasoned

4  decision on March 23, 2009.  Petitioner next filed a habeas petition in the California Court of

5  Appeal, Second Appellate District, on May 18, 2009.  The appellate court denied the petition on

6  June 19, 2009.  Petitioner then filed a habeas petition in the California Supreme Court on

7  October 14, 2009.  The petition was summarily denied on April 28, 2010.

8        Petitioner filed the instant federal petition for writ of habeas corpus on August 9, 2010.

9  Respondent filed an answer to the petition on October 26, 2010.  Petitioner filed a traverse on

10  November 24, 2010.

11  **STATEMENT OF FACTS**[2]

12        Prior to May, 1987, Petitioner was living next door to the victim, the victim's wife and

13  their baby. During May, 1987, Petitioner began having an affair with the victim's wife, causing

14  tension between Petitioner and the victim.  About six months into the affair, the victim's wife

15  tried to end the relationship.  On the morning of December 8, 1987, the victim was to take his

16  baby to a sitter, but he did not show.  The victim's wife was notified at work and she went home

17  to check on her family.  When the victim's wife arrived home, she found Petitioner cleaning her

18  apartment.  The victim's wife noticed that her bed sheets and drapery were missing, Petitioner's

19  clothing was missing, bleach had been used and there was blood on Petitioner.  Also, the victim's

20  wife discovered her child lying on the floor making gasping sounds.  Petitioner told the victim's

21  wife that four men had kidnaped the victim and tried to kidnap the baby.  Petitioner then drove

22  the victim's wife and baby to the hospital.  The baby stopped breathing in route to the hospital,

23  but was revived by doctors.  Doctors concluded that the baby had been strangled manually.

24        When police initially questioned Petitioner, he maintained that four men had been

25  searching for the victim in the months prior to the incident and the same four men took the

26  victim.  After some investigation, police officers found the victim's body in the trunk of

27  ───────────────

28     [2] This information is derived from the summary of the crime set forth in the opinion of the Los Angeles County Superior Court.

1   Petitioner's sister's vehicle, which Petitioner had been driving.  The victim was found with all

2   the missing sheets and drapes from his apartment as well as the clothing Petitioner was wearing

3   the day of the incident.  Reports later showed that the victim was beaten to death with a blunt

4   object.  Upon the discovery of the victim's body, Petitioner admitted he fabricated the story about

5   four men and said he killed the victim in self-defense.  Evidence was presented at trial which

6   showed Petitioner was considerably larger than the victim and that Petitioner lacked defensive

7   wounds consistent with his story of self-defense.  Petitioner also maintains that he never touched

8   the baby.

**DISCUSSION**

10  I.    Standard of Review

11       On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

12  of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

13  enactment.  Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries

14  v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th

15  Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy,

16  521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).

17  The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its

18  provisions.

19       Petitioner is in custody of the California Department of Corrections and Rehabilitation

20  pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state

21  court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because

22  he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass

23  v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), *citing* White v.

24  Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a

25  habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the

26  petition is not challenging his underlying state court conviction.'").

27       The instant petition is reviewed under the provisions of the Antiterrorism and Effective

28  Death Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade,  538 U.S. 63,

1   70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the

2   adjudication of the claim "resulted in a decision that was contrary to, or involved an

3   unreasonable application of, clearly established Federal law, as determined by the Supreme Court

4   of the United States" or "resulted in a decision that was based on an unreasonable determination

5   of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C.

6   § 2254(d); see Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

7          "[A] federal court may not issue the writ simply because the court concludes in its

8   independent judgment that the relevant state court decision applied clearly established federal

9   law erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.

10  A federal habeas court making the "unreasonable application" inquiry should ask whether the

11  state court's application of clearly established federal law was "objectively unreasonable." Id. at

12  409.     Petitioner has the burden of establishing that the decision of the state court is contrary to

13  or involved an unreasonable application of United States Supreme Court precedent. Baylor v.

14  Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the

15  states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a

16  state court decision is objectively unreasonable.  See Clark v. Murphy, 331 F.3d 1062, 1069 (9th

17  Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

18  II.     Review of Petition

19         There is no independent right to parole under the United States Constitution; rather, the

20  right exists and is created by the substantive state law which defines the parole scheme.  Hayward

21  v. Marshall, 603 F.3d 546, 559, 561 (9th Cir. 2010) (en banc) (citing Bd. of Pardons v. Allen, 482

22  U.S. 369, 371 (1987); Pearson v. Muntz, No. 08-55728, 2010 WL 2108964, * 2 (9th Cir. May

23  24, 2010) (citing Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174

24  (2005)); Cooke v. Solis, No. 06-15444, 2010 WL 2330283, *6 (9th Cir. June 4, 2010).

25  "[D]espite the necessarily subjective and predictive nature of the parole-release decision, state

26  statutes may create liberty interests in parole release that are entitled to protection under the Due

27  Process Clause." Bd. of Pardons v. Allen, 482 U.S. at 371.

28          In California, the Board of Parole Hearings' determination of whether an inmate is

1  suitable for parole is controlled by the following regulations:

2          (a) General. The panel shall first determine whether the life prisoner is suitable for
   release on parole. Regardless of the length of time served, a life prisoner shall be found
3  unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an
   unreasonable risk of danger to society if released from prison.

4
           (b) Information Considered. All relevant, reliable information available to the
5  panel shall be considered in determining suitability for parole. Such information shall
   include the circumstances of the prisoner's social history; past and present mental state;
6  past criminal history, including involvement in other criminal misconduct which is
   reliably documented; the base and other commitment offenses, including behavior before,
7  during and after the crime; past and present attitude toward the crime; any conditions of
   treatment or control, including the use of special conditions under which the prisoner may
8  safely be released to the community; and any other information which bears on the
   prisoner's suitability for release. Circumstances which taken alone may not firmly
9  establish unsuitability for parole may contribute to a pattern which results in a finding of
   unsuitability.

10
   Cal. Code Regs. tit. 15, §§ 2402(a) and (b).  Section 2402(c) sets forth circumstances tending to

11
   demonstrate unsuitability for release.  "Circumstances tending to indicate unsuitability include:

12
           (1) Commitment Offense.  The prisoner committed the offense in an especially heinous,
13  atrocious or cruel manner.  The factors to be considered include:

14                  (A) Multiple victims were attacked, injured or killed in the same or separate
                    incidents.
15                  (B) The offense was carried out in a dispassionate and calculated manner,
                    such as an execution-style murder.
16                  (C) The victim was abused, defiled or mutilated during or after the
   offense.
17                  (D) The offense was carried out in a manner which demonstrates an
                    exceptionally callous disregard for human suffering.
18                  (E) The motive for the crime is inexplicable or very trivial in relation to
                    the offense.

19
           (2) Previous Record of Violence.  The prisoner on previous occasions inflicted or
20  attempted to inflict serious injury on a victim, particularly if the prisoner
   demonstrated serious assaultive behavior at an early age.

21
           (3) Unstable Social History.  The prisoner has a history of unstable or tumultuous
22  relationships with others.'

23         (4) Sadistic Sexual Offenses.  The prisoner has previously sexually assaulted
   another in a manner calculated to inflict unusual pain or fear upon the victim.

24
           (5) Psychological Factors.  The prisoner has a lengthy history of severe mental
25  problems related to the offense.

26         (6) Institutional Behavior.  The prisoner has engaged in serious misconduct in
   prison or jail.

27
   Cal. Code Regs. tit. 15, § 2402(c)(1)(A)-(E),(2)-(9).

28

5

1    Section 2402(d) sets forth the circumstances tending to show suitability which include:

2    (1) No Juvenile Record.  The prisoner does not have a record of assaulting others as a
     juvenile or committing crimes with a potential of personal harm to victims.

3
     (2) Stable Social History.  The prisoner has experienced reasonably stable relationships
4    with others.

5    (3) Signs of Remorse.  The prisoner performed acts which tend to indicate the presence of
     remorse, such as attempting to repair the damage, seeking help for or relieving suffering
6    of the victim, or indicating that he understands the nature and magnitude of the offense.

7    (4) Motivation for Crime.  The prisoner committed his crime as a result of significant
     stress in his life, especially if the stress has built over a long period of time.

8
     (5) Battered Woman Syndrome.  At the time of the commission of the crime, the prisoner
9    suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears
     the criminal behavior was the result of that victimization.

10
     (6) Lack of Criminal History.  The prisoner lacks any significant history of violent crime.

11
     (7) Age.  The prisoner's present age reduces the probability of recidivism.

12
     (8) Understanding and Plans for Future.  The prisoner has made realistic plans for release
13   or has developed marketable skills that can be put to use upon release.

14   (9) Institutional Behavior.  Institutional activities indicate an enhanced ability to function
     within the law upon release.

15
Cal. Code Regs. tit. 15, § 2402(d)(1)-(9)

16
        The California parole scheme entitles the prisoner to a parole hearing and various

17
procedural guarantees and rights before, at, and after the hearing.  Cal. Penal Code § 3041.5.  If

18
denied parole, the prisoner is entitled to subsequent hearings at intervals set by statute.  Id.  In

19
addition, if the Board or Governor find the prisoner unsuitable for release, the prisoner is entitled

20
to a written explanation. Cal. Penal Code §§ 3041.2, 3041.5.  The denial of parole must also be

21
supported by "some evidence," but review of the Board's or Governor's decision is extremely

22
deferential.  In re Rosenkrantz, 29 Cal.4th 616, 128 Cal.Rptr.3d 104, 59 P.3d 174, 210 (2002).

23
        Because California's statutory parole scheme guarantees that prisoners will not be denied

24
parole absent some evidence of present dangerousness, the Ninth Circuit Court of Appeals

25
recently held California law creates a liberty interest in parole that may be enforced under the

26
Due Process Clause.  Hayward v. Marshall, 602 F.3d at 561-563; Pearson v. Muntz, 606 F.3d

27
606, 608-609 (9th Cir. 2010).  Therefore, under 28 U.S.C. § 2254, this Court's ultimate

28

1  determination is whether the state court's application of the some evidence rule was unreasonable

2  or was based on an unreasonable determination of the facts in light of the evidence.  Hayward v.

3  Marshall. 603 F.3d at 563; Pearson v. Muntz, 606 F.3d at 608.

4         The applicable California standard "is whether some evidence supports the *decision* of

5  the Board or the Governor that the inmate constitutes a current threat to public safety, and not

6  merely whether some evidence confirms the existence of certain factual findings."  In re

7  Lawrence, 44 Cal.4th 1181, 1212 (2008) (emphasis in original and citations omitted).  As to the

8  circumstances of the commitment offense, the Lawrence Court concluded that

9          although the Board and the Governor may rely upon the aggravated circumstances
        of the commitment offense as a basis for a decision denying parole, the aggravated

10         nature of the crime does not in and of itself provide some evidence of current
        dangerousness to the public unless the record also establishes that something in

11         the prisoner's pre- or post-incarceration history, or his or her current demeanor
        and mental state, indicates that the implications regarding the prisoner's

12         dangerousness that derive from his or her commission of the commitment offense
        remain probative to the statutory determination of a continuing threat to public

13         safety.

14 Id. at 1214.

15        In addition, "the circumstances of the commitment offense (or any of the other factors

16 related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to

17 the determination that a prison remains a danger to the public.  It is not the existence or

18 nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the

19 significant circumstance is how those factors interrelate to support a conclusion of current

20 dangerousness to the public."  In re Lawrence, 44 Cal.4th at 1212.

21        "In sum, a reviewing court must consider 'whether the identified facts are *probative* to the

22 central issue of *current* dangerousness when considered in light of the full record before the

23 Board or the Governor.'"  Cooke v. Solis, 606 F.3d 1206, 1214 (9th Cir. 2010) (emphasis in

24 original) (citing Hayward v. Marshall, 603 F.3d at 560).

25        A.    State Court Decision

26        The superior court provided the last reasoned decision, rejecting Petitioner's claim as

27 follows:

28          The Board found the Petitioner unsuitable for parole after a parole consideration

1   hearing held on August 7, 2008.  The Petitioner was denied parole for three years.  The
    Board concluded that the Petitioner would pose an unreasonable risk of danger to society
2   or a threat to public safety if he is released.  The Board based its decision primarily on the
    commitment offense and Petitioner's lack of insight into the nature of the offense.
3
        The Court finds that there is some evidence to support the Board's finding that the
4   commitment offense involved multiple victims and demonstrates an exceptionally callous
    disregard for human suffering.  Cal. Code Regs., tit. 15, § 2402, subds. (c)(1)(A) &
5   (c)(1)(D).  In this case, the adult victim was beaten severely.  He suffered several deep
    blows to his head, fracturing his skull and jaw, his nose and ears were torn and there was
6   extensive bruising on other parts of his body. The infant victim was strangled manually
    causing deep bruising around the neck and bursting blood vessels in the eyes.
7
        The Court also finds there is some evidence to support the Board's finding that the
8   motive for the commitment offense was very trivial in relation to the offense. Cal. Code
    Regs., tit. 15, § 2402, subd. (c)(1)(E).  Here, the motive for the crime seems to be that
9   Victim was married to Petitioner's lover.  While Petitioner maintains his story of self-
    defense, the theory was rejected at his trial.
10
        However, as noted by the California Supreme Court in the case of *In re Lawrence*
11  (2008) 44 Cal.4th 1181, 1221, the Board may base a denial or reversal of parole on the
    circumstances of the commitment offense, or other immutable factors, only if those facts
12  support the ultimate conclusion that the inmate continues to pose an unreasonable risk to
    public safety. Thus, the relevant inquiry is whether the circumstances of the commitment
13  offense, when considered in light of other facts in the record, including the passage of
    time and attendant changes in the inmate's psychological or mental attitude, are such that
14  they continue to be predictive of current dangerousness. *Id*. at page 1221.

15      The Court finds that there were additional factors which were predictive of current
    dangerousness. An inmate's lack of insight into the nature of his offense may be some
16  evidence that he currently poses an unreasonable risk of danger to society. *In re Shaputis*,
    (2008) 44 Cal.4th 1241, 1260.  Here, the Board found that Petitioner has yet to grasp the
17  gravity of his commitment offense.  Petitioner claims Victim was attacking him and
    dragging him about, but Victim weighed 40 pounds less than Petitioner at the time.
18  Petitioner claims that Victim was beating him with a stick but there was no evidence of
    any injury to Petitioner and Petitioner did not point out any stick at the scene when he
19  was questioned by police (nor was one ever found).  Petitioner claims that he did not
    strangle the baby, but he has admitted that no other person was present during the
20  incident.  This evidence supports the Board's conclusion that Petitioner distances himself
    from the commitment offense and still is unable to take responsibility for his actions.
21
        The Board also considered Petitioner's latest psychological report, from 2008, and
22  found that it was not entirely supportive of parole.  The report indicated that while
    Petitioner had a low likelihood for violent offense, his risk "would increase if he were to
23  have problems in a romantic relationship . . . he may benefit from participating in self-
    help programming, further exploration into his crime, exploring his expectations into a
24  relationship and the potential destabilizing factors and developing a plan to manage
    these."  This supports the Board's concern that Petitioner will inevitably engage in a
25  relationship with another woman and he is not yet ready to do so.

26      The Board did note the positive gains that Petitioner has achieved while
    incarcerated.  Petitioner has been completely discipline free.  Petitioner has taken some
27  self-help courses, earned a vocational certification and currently works as a sewing
    machine mechanic.  The Board also found Petitioner has adequate parole plans.
28  However, it was concluded that despite these gains, Petitioner remained an unreasonable

8

1    threat to public safety at the time of his hearing. Penal Code § 3041(b).

2    (See Resp't's Answer Ex. 2.)

3    The state court decision was not objectively unreasonable.  First, the state court

4    reasonably determined that some evidence supported the finding that the commitment offense

5    was carried out in an especially heinous, atrocious or cruel manner.  The evidence supported the

6    Board's determination that multiple victims were attacked and injured. Cal. Code Regs., tit. 15,

7    § 2402, subd. (c)(1)(A).  Petitioner attacked and killed the adult victim, and he strangled and

8    nearly killed the infant victim.  There was also some evidence to support the Board's

9    determination that the offense was carried out in a manner which demonstrated an exceptionally

10   callous disregard for human suffering. Cal. Code Regs., tit. 15, § 2402, subd. (c)(1)(D).

11   Petitioner beat the adult victim to death with a blunt object. The adult victim suffered skull and

12   jaw fractures, extensive bruising to the body, and multiple tears to the nose and ears.  In addition,

13   the infant victim was manually strangled causing deep bruising around the neck and burst blood

14   vessels in the eyes.  Even more disturbing is the fact that the infant victim was found gasping and

15   dying on the floor by the mother while Petitioner was cleaning the house.  Certainly the evidence

16   supports the Board's determination of a callous disregard for human suffering.  Last, the Board

17   found the motive for the crime to be trivial.  Cal. Code Regs., tit. 15, § 2402, subd. (c)(1)(E).

18   There is some evidence to support this finding as well, since the only motive for the murder and

19   attempted murder appeared to be the fact that the victim was married to Petitioner's lover.  In

20   light of the evidence, the state court determination that the crime was committed in an especially

21   heinous, atrocious and cruel manner was not unreasonable.

22   The California Supreme Court has held that "[t]he nature of the prisoner's offense, alone,

23   can constitute a sufficient basis for denying parole." In re Rosenkrantz, 29 Cal.4th 616, 682

24   (2002).  However, in cases where prisoners have served their suggested base terms and have

25   demonstrated strong evidence of rehabilitation and no other evidence of current dangerousness,

26   the underlying circumstances of the commitment offense alone rarely will provide a valid basis

27   for denying parole.  In re Lawrence, 44 Cal.4th 1191, 1211 (2008).  In this case, the Board did

28   not rely only on immutable factors such as the commitment offense and prior criminal history.

1    The Board specifically determined Petitioner posed a current risk of danger to the public

2 based on his lack of insight into the offense and his minimization of his conduct.  Cal. Code

3 Regs., tit. 15, § 2402, subd. (b).  As noted by the superior court, Petitioner's version of events is

4 unbelievable and clearly contradicted by the evidence.  He fails to take responsibility for his

5 actions.  He maintains that he acted in self-defense because the victim beat him with a stick, yet

6 there was no evidence of any injury sustained by Petitioner, nor was any stick pointed out by

7 Petitioner at the scene or discovered by investigators.  He also claims he was not responsible for

8 the injuries to the baby, yet he admits no one else was present at the time the attack took place.

9 Petitioner's lack of insight and minimization of his conduct provides some evidence of a current

10 risk of danger to the public if released.  In re Shaputis, 44 Cal.4th 1241, 1260 (2008).

11    The Board also considered the positive factors indicating suitability for parole.  Petitioner

12 did not have a prior criminal history; he had not sustained any instances of rules violations in

13 prison; the psychological evaluation was positive; he had viable parole plans; and he was

14 commended for his participation in self-help activities and programming.  Nevertheless, after

15 considering the factors in favor of suitability, the Board concluded that the positive aspects of

16 Petitioner's behavior did not outweigh the factors of unsuitability.  The Board determined that

17 the circumstances of Petitioner's commitment offense and his lack of insight and minimization of

18 conduct were more probative of a danger to the public should he be released.  The state courts'

19 determination that there was some evidence to support the Board's 2008 decision is not an

20 unreasonable application of California's some evidence standard, nor an unreasonable

21 determination of the facts in light of the record.  Accordingly, federal habeas corpus relief is

22 unavailable.

**RECOMMENDATION**

24    Based on the foregoing, it is HEREBY RECOMMENDED that:

25    1.    The instant petition for writ of habeas corpus be DENIED; and

26    2.    The Clerk of Court be directed to enter judgment in favor of Respondent.

27    This Findings and Recommendation is submitted to the assigned United States District

28 Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the

1   Local Rules of Practice for the United States District Court, Eastern District of California.

2   Within thirty (30) days after being served with a copy, any party may file written objections with

3   the court and serve a copy on all parties.  Such a document should be captioned "Objections to

4   Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served

5   and filed within fourteen (14) days after service of the objections.  The Court will then review the

6   Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that

7   failure to file objections within the specified time may waive the right to appeal the District

8   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

9

10        IT IS SO ORDERED.

11   **Dated:**   **December 22, 2010**                    **/s/ Gary S. Austin**
                                                        UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28